### David B. Merrill and another v. Daniel Cahill.

The statute regulating the duties of millers and mill owners (*Comp. L.* §1833, *et seq.*), is meant to apply to such mills only as are in the habit of grinding for toll.

Under this statute, millers who hold themselves out to the community as millers grinding for the public generally, are bound to a similar impartiality to that required of common carriers, inn - keepers, and those following such public avocations. And it is as clearly their duty to receive grain when the mill is running, as to grind it when received.

The conversation between the person bringing grain to the mill to be ground, and the agent of the owner, who, under the owner's direction, refuses to receive the grain, is competent evidence as part of the *res gestæ*, in a suit against the owner under the statute, for such refusal.

Where two or more persons own and run such a mill, they are all liable for a re-
fusal to receive the grain brought to be ground, whether the refusal come from
one or all such owners, or from the person in charge.

*Submitted on briefs April 3d. Decided April 10th.*

Case reserved from Kalamazoo Circuit.

The action was originally brought by Cahill against the
plaintiffs in error, before a justice of the peace, where he
declared as follows: "The said plaintiff, by Giddings &
May, his attorneys, complains of the said defendants for
this, that heretofore, to wit; on the 15th day of December,
1858, the said defendants were the occupants of a certain
grist-mill situate and being in the township of Kalama-
zoo, in the county of Kalamazoo, and state of Michigan,
and then and there had the control and possession thereof,
and were using and running the same; and being so in
the possession and occupancy of the said grist-mill, the
said defendants, at the time and place aforesaid, did neg-
lect and refuse to receive and grind in said grist-mill, a
grist of said plaintiff, consisting of a large quantity of
wheat, to wit: two bushels, belonging to and being the
property of said plaintiff, and which said wheat was then
and there offered and tendered to said defendants at the
said grist-mill by said plaintiff, to be ground by them
for said plaintiff.

"And the said plaintiff further avers that by reason of
the neglect and refusal of said defendants to grind the
wheat of said plaintiff as aforesaid, the said plaintiff was
put to great trouble and expense, and to a great loss of
time of himself and team in going to and from said grist-
mill with the said wheat, and suffered great damage on
account of the neglect and refusal of said defendants to
grind said wheat, to wit: twenty dollars; to the said plain-
tiff's damage, in all, of twenty-five dollars, and contrary
to chapter 132 of the Revised Statutes of 1846 of said
state."

The defendants below demurred generally to this declara-
tion, but the demurrer was overruled by the justice, and

the defendants then pleaded the general issue, and the parties proceeded to trial.

Rufus Aldrich, being sworn, testified for the plaintiff below as follows: "The defendants own and carry on a grist-mill in the town of Kalamazoo, and I am in their employ at said mill, as their head miller, and I have been thus employed by them since the 7th day of May last. The plaintiff lives three or four miles from the mill, and I had been ordered by Mr. Merrill not to grind any grist for the plaintiff which he might bring to the mill. The plaintiff came to the mill a week ago last Wednesday, with a bag of wheat in a two-horse wagon. I should think it was a two bushel bag."

The plaintiff's counsel then put the following question to the witness : "What did the plaintiff say he wanted done with the wheat ?"

To this the defendants'. counsel objected, on the ground that no conversation between the plaintiff and witness, in the absence of the defendants, could bind or affect the defendants ; which objection was overruled by the justice, and the witness proceeded as follows :

"The plaintiff said to me he wanted the wheat in his wagon ground into a grist. I told him I could not grind it. The plaintiff asked why I could not grind it. I told him I had been ordered by Mr. Merrill not to grind any grist for him. When grists are received into the mill we take them from the wagon. This wheat was not received into the mill, nor taken out of the wagon. The plaintiff asked me to grind it, and I would not. I told him I must obey instructions. I am the head miller. The mill of Merrill & Fish is nearest to plaintiff. The next mill is Walbridge's, two and a half miles distant. It is worth half a dollar to go with a team from Cahill's house to the mill of the defendants."

On cross examination the witness testified as follows : "I have never refused to grind any wheat received in the

mill. I usually receive the wheat. I did not take this wheat from the wagon."

This being all the testimony in the case, the justice rendered judgment in favor of the plaintiff below, against the defendants below, for five dollars and fifty cents damages, and two dollars and eighty cents costs of suit; whereupon the defendants below sued out a writ of certiorari from the Circuit Court of said county, and the judge thereof reserved the following questions for the opinion of the Supreme Court.

1st: Is the declaration good, under general demurrer, under the Justice's Act?

2d: If not, did the defendants waive the objection by pleading over and going to trial on the merits?

3d: Was the objection to the admission of the conversation between the plaintiff and the witness well taken?

4th: Does the statute on which the action was grounded oblige the miller to grind every grist that is taken to his mill, *whether he consents to receive the grist or not;* or does it require him to use reasonable diligence in grinding in the order in which grists are *actually received,* according to his ability and the capacity of his mill and machinery; leaving it discretionary with the miller to receive or refuse the proffered grist?

5th: When the mill is running and able to do business, may the miller refuse to receive grain for grinding, without subjecting himself to an action under the statute?

6th: If the mill is not running, but in a condition to run, may the miller refuse to receive grists and not subject himself to an action?

7th: When the mill is owned or conducted by two or more, will the refusal of one to receive a grist subject all to an action?

*H. Mower,* for plaintiffs in error:

As defendant in error has no remedy, except under the

MERRILL v. CAHILL.

statute, the cause of action arising under the statute must be specially stated: — 4 *Johns.* 197. The statute affixes a penalty only in three cases: for not well and sufficiently grinding any grain; for not well and sufficiently grinding the grain in due time, and for taking illegal toll. The declaration does not allege the default of the defendants in either of these particulars.

The evidence of the conversation between the plaintiff below and the witness, was improperly received; for if it was penal not to receive the grain, then the witness was liable, and could not throw his guilt on any one else. If a master command a servant to do an illegal act, he can not justify himself by the command: — *Reeves Dom. Rel.* 357. The admissions of the agent are evidence against the principal only while doing some *lawful* act within the scope of his agency.

Under the proof, no judgment should have been rendered against Fish. One partner is not liable for the torts of his co-partner, unless he was privy to them: — *Coll. on Part.* § 457; *Story on Part.* § 168; 2 *Comst.* 616; 6 *Mass.* 245; 5 *Greenl.* 295.

*Giddings & May*, for defendants in error:

The declaration containing a substantial statement of a cause of action, must be held sufficient: — 1 *Mich.* 352; 3 *Mich.* 460.

The witness being the agent of defendants, and actually carrying on their mill, as such agent stood in their place. What he said was their saying, and what he did was their doing. What he said, as well as what the plaintiff said, if it constituted a part of the transaction of bringing or delivering the grain at the mill, and the intent of such delivery or bringing, and of the neglect or refusal to grind, is part of the *res gestæ*, and as such, what was said between the plaintiff and the witness, who was the agent of defendants, was admissible in evidence: — 9 *Cow.* 205; 1 *Greenl. Ev.* § 113.

MERRILL v. CAHILL.

It is not necessary that the owners should be present, refusing or neglecting in person, in order to make them liable under the statute. It is sufficient that they or their agents neglect to grind when brought. The statute would be rendered nugatory if the rights of the public must depend upon the will of the owner to receive or refuse to receive, and by his neglect or refusal to receive the grain, he could evade the express provisions of the law requiring him to grind the grain when brought.

CAMPBELL J.:

The principal inquiry necessary in this case, is concerning the meaning of the statute regulating the duties of millers and mill-owners.

On comparing the various sections of the statute, it is apparent that it is meant to apply to such mills as are in the habit of grinding for toll. After fixing the rates of toll for grinding various grains, the law provides that, "the owner or occupier of any grist-mill shall well and sufficiently grind the grain brought to his mill for that purpose, in due time, and in the order in which it shall be received;" saving however the right to the mill-owner to grind his own grain at all times. The statute also provides that any "miller or owner or occupant of a grist-mill, who shall not well and sufficiently grind any grain as aforesaid, or not in due time as the same shall be brought," &c., shall be liable to five dollars damages above the actual damage.

While the law does not turn every flouring-mill into a custom-mill, it is, we think, very clearly designed to compel those persons who undertake to hold themselves out to the community as millers, grinding for the public generally, to a similar impartiality to that required of common carriers, inn-keepers, and those following such public avocations. There is as clear a duty to receive grain, when the mill is running, as there is to grind it when received. The

duty is to grind grain *brought* to the mill in the order of its receipt. To allow a miller to refuse to receive it when brought, would enable him to evade the statute entirely. Whether any duty attaches when the running of the mill has been discontinued for any thing more than a temporary purpose, does not properly arise in this case. But when a mill is in running order, and in actual employment from day to day in custom work, we think the statute applies, and forbids any partiality.

The declaration is, we think, entirely clear and certain, and conforms fully to the sense of the statute.

The conversation between the plaintiff and the miller was a part of the *res gestæ:* as such it was properly admitted.

As this is a civil private action, and the liability created by the statute is to private damages, we think it makes no difference whether the refusal to receive the grain comes from one or all of the owners, or from the person in charge. They are bound to see that every customer is properly treated. Their case is like that of a vessel - owner or other common carrier, who is responsible for his agents as well as for his own acts. Mill - owners would otherwise find it very easy to escape any liability whatever.

Let it be certified to the Circuit Court for the county of Kalamazoo, that the declaration is sufficient; that the statute applies to refusal to receive grain, as well as to refusal or neglect to grind it, and that when a mill is running and is used for general custom work, the miller can not refuse to receive the grain of a particular person. Also that the conversation proved was properly received in evidence. The other questions we decline answering.

MANNING and CHRISTIANCY JJ., concurred.

MARTIN CH. J., did not sit in this case.